1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11    LISA MARIE HICKEY,              )   Civil No. 07cv0228-BEN (BLM)
                                      )
12                   Petitioner,      )
                                      )   **REPORT AND RECOMMENDATION FOR**
13    v.                              )   **ORDER DENYING PETITION FOR**
                                      )   **WRIT OF HABEAS CORPUS**
14    DAWN S. DAVISON, Warden,        )
                                      )
15                   Respondent.      )
      _____)

16

17           This Report and Recommendation is submitted to United States

18    District Judge Roger T. Benitez pursuant to 28 U.S.C. § 636(b) and

19    Local Civil Rules 72.1(d) and HC.2 of the United States District

20    Court for the Southern District of California.

21           On November 13, 2006[1], Petitioner Lisa Marie Hickey, a state

22    prisoner appearing *pro se*, commenced these habeas corpus proceedings

23    pursuant to 28 U.S.C. § 2254.  Doc. No. 1.  Petitioner challenges

24    her conviction for manufacturing methamphetamine.  Id.

25    ///

26    ///
      _____

27           [1]    Petitioner originally filed her Petition in the Central District of
      California.  That court transferred the case to this District on February 2,
28    2007.  Doc. No. 1 (finding Southern District to be the more convenient forum).

                              -1-              07cv0228-BEN (BLM)

1    This Court has considered the Petition ("Pet."), Respondents'

2  Answer, and all supporting documents submitted by the parties.  For

3  the reasons set forth below, this Court **RECOMMENDS** that Petitioner's

4  Petition for Writ of Habeas Corpus be **DENIED**.

5  <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

6  **A.    Petitioner's Conviction and Sentence**

7    The following facts are taken from the California Court of

8  Appeal's opinion on direct review in <u>People v. Hickey</u>, No. D046432,

9  slip op. (Cal. Ct. App. April 20, 2006).  <u>See</u> Lodgment 5.  This

10  Court presumes the state court's factual determinations to be

11  correct absent clear and convincing evidence to the contrary.  28

12  U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340

13  (2003); <u>see also</u> <u>Parke v. Raley</u>, 506 U.S. 20, 35-36 (1992) (holding

14  findings of historical fact, including inferences properly drawn

15  from such facts, are entitled to statutory presumption of

16  correctness).

17    Special agents of the Drug Enforcement Agency
   (DEA) executed a search warrant of a storage unit
18  Hickey rented.  The agents found equipment commonly
   used to manufacture methamphetamine, including
19  glassware, coffee grinders, coffee filters, a funnel,
   a mason jar with rubber tubing, an electric hot plate,
20  two scales, and rubber gloves.  The agents later
   determined that methamphetamine residue was present on
21  much of the equipment.  In addition, the coffee
   grinders contained residue from pseudoephedrine, a
22  chemical precursor to methamphetamine.  Agents found
   a bottle that contained 4.8 grams of pseudoephedrine
23  in liquid solution, and a container of phosphorous
   acid—a chemical commonly used in the process of
24  converting pseudoephedrine into methamphetamine.  The
   storage unit also contained a cloth bag that had
25  chemical burns consistent with the presence of red
   phosphorous, another chemical commonly used in the
26  process of converting pseudoephedrine into
   methamphetamine.

27  ///

28  ///

-2-

07cv0228-BEN (BLM)

1    DEA Agent Andrew Jauch arrested Hickey.  After
     her arrest, Hickey admitted to Agent Jauch that the
2    materials found in the storage unit belonged to her.
     Hickey told Agent Jauch that she had purchased most of
3    the items from a man named Terry H.. (sic)  Hickey
     also told Agent Jauch that she intended to sell or
4    trade the items to a second person named Fred B., who
     was looking to purchase items to use in the
5    manufacture of methamphetamine.  Hickey also admitted
     to Agent Jauch that she had "washed some dope"[2] for
6    Fred B.

7    In March 2005, the People charged Hickey in an
     amended information with manufacturing methamphetamine
8    (§ 11379.6, subd. (a), count 1), possessing
     pseudoephedrine with the intent to manufacture
9    methamphetamine (§ 11383, subd. (c)(1), count 2), and
     possessing a firearm as a felon (Pen. Code, § 12021,
10   subd. (a)(1), count 3).  As to counts 1 and 2, the
     People alleged that Hickey had previously been
11   convicted of manufacturing methamphetamine (§ 11370.2,
     subd. (b)).  In addition, the People alleged that
12   Hickey had suffered four prior felony convictions
     (Pen. Code, § 1203, subd. (e)(4)) and two prison prior
13   convictions (Pen. Code, §§ 667.5, subd. (b), 668).

14   In March 2005, in the first phase of a bifurcated
     trial, a jury found Hickey guilty of the charged
15   offenses.  In the second phase of the trial, Hickey
     admitted the prior conviction allegations.  The trial
16   court sentenced Hickey to a total prison term of 10
     years eight months.

17

18   Lodgment 5.

19   **B.    <u>Direct Appeal</u>**

20   Petitioner appealed to the California Court of Appeal, Fourth

21   Appellate District, Division One.  Lodgment 2.  In an unpublished

22   opinion filed on April 20, 2006, the California Court of Appeal

23   affirmed the conviction.  Lodgment 1.  Petitioner then filed a

24   petition for review in the California Supreme Court (Lodgment 6),

25   which was summarily denied without citation of authority on July 19,

26   _____
     [2]    Agent Jauch defined the phrase, "washing dope," as follows: "at a
27   point in manufacturing methamphetamine, near the end ... it sometimes has a dirty
     appearance, and manufacturers like to wash it with a solvent like acetone in
28   order to give it a shinier, clearer, cleaner appearance."

                              -3-                    07cv0228-BEN (BLM)

1    2006 (Lodgment 7).

2    **C.      <u>Collateral Review</u>**

3           Petitioner did not seek collateral review of her conviction

4    in the state courts.

5           On November 13, 2006, Petitioner filed the instant Petition

6    for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Doc. No. 1.

7    Respondent timely filed an Answer on April 4, 2007.  Doc. No. 7.

8    Petitioner did not file a traverse by the May 9, 2007 deadline or

9    timely request additional time to do so and the Court took the

10   matter under submission.

11                        **<u>STANDARD OF REVIEW</u>**

12          Title 28 of the United States Code, section 2254(a), sets

13   forth the following scope of review for federal habeas corpus

14   claims:

15                 The Supreme Court, a Justice thereof,
                a circuit judge, or a district court shall
16              entertain an application for a writ of
                habeas corpus in behalf of a person in
17              custody pursuant to the judgment of a State
                court only on the ground that he is in
18              custody in violation of the Constitution or
                laws or treaties of the United States.

19

20   28 U.S.C. § 2254(a).

21          The Petition was filed after enactment of the Anti-terrorism

22   and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

23   132, 110 Stat. 1214.   Under 28 U.S.C. § 2254(d), as amended by

24   AEDPA:

25                 (d)   An application for a writ of habeas
                corpus on behalf of a person in custody
26              pursuant to the judgment of a State court
                shall not be granted with respect to any
27              claim that was adjudicated on the merits in
                State  court  proceedings  unless  the
28              adjudication of the claim—

                                -4-                    07cv0228-BEN (BLM)

1              (1)  resulted in a decision that was
         contrary to, or involved an unreasonable
2        application of, clearly established Federal
         law, as determined by the Supreme Court of
3        the United States; or

4              (2)  resulted in a decision that was
         based on an unreasonable determination of
5        the  facts  in  light  of  the  evidence
         presented in the State court proceeding.
6

7  28 U.S.C. § 2254(d).  Summary denials do constitute adjudications on

8  the merits.  See Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002).

9  Where there is no reasoned decision from the state's highest court,

10  the  Court  "looks  through"  to  the  underlying  appellate  court

11  decision.  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).

12       A state court's decision is "contrary to" clearly established

13  federal  law  if  the  state  court:  (1)  "arrives  at  a  conclusion

14  opposite to that reached" by the Supreme Court on a question of law;

15  or (2) "confronts facts that are materially indistinguishable from

16  a relevant Supreme Court precedent and arrives at a result opposite

17  to [the Supreme Court's]."  Williams v. Taylor, 529 U.S. 362, 405

18  (2000).

19       A state court's decision is an "unreasonable application" of

20  clearly established federal law where the state court "identifies

21  the correct governing legal principle from this Court's decisions

22  but  unreasonably  applies  that  principle  to  the  facts  of  the

23  prisoner's case."  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).

24  "[A] federal habeas court may not issue a writ simply because the

25  court concludes in its independent judgment that the relevant state-

26  court decision applied clearly established federal law erroneously

27  or incorrectly . . . .  Rather, that application must be *objectively*

28  *unreasonable*."   Andrade,  538  U.S.  at  75-76  (emphasis  added)

1   (internal quotation marks and citations omitted). Clearly

2   established federal law "refers to the holdings, as opposed to the

3   dicta, of [the United States Supreme] Court's decisions." <u>Williams</u>,

4   529 U.S. at 412.

5         Finally, habeas relief is also available if the state court's

6   adjudication of a claim "resulted in a decision that was based on an

7   unreasonable determination of the facts in light of the evidence

8   presented in state court." 28 U.S.C. § 2254(d)(2). A state court's

9   decision will not be overturned on factual grounds unless this Court

10  finds that the state court's factual determinations were objectively

11  unreasonable in light of the evidence presented in the state court

12  proceeding. <u>See</u> <u>Miller-El</u>, 537 U.S. at 340. This Court will

13  presume that the state court's factual findings are correct, and

14  Petitioner may overcome that presumption only by clear and

15  convincing evidence. 28 U.S.C. § 2254(e)(1).

16                              **<u>DISCUSSION</u>**

17        Petitioner presents two grounds for habeas relief. In ground

18  one, Petitioner contends that the trial court violated her federal

19  due process rights by incorrectly instructing the jury on the

20  elements of manufacturing methamphetamine. Pet. at 5. In ground

21  two, Petitioner argues that the trial court violated her federal due

22  process rights by failing to give *sua sponte* a lesser-included

23  offense instruction. <u>Id.</u> More precisely, Petitioner contends that

24  California Health and Safety Code § 11379.6(c), which prohibits

25  *offering* to manufacture methamphetamine, is a lesser-included

26  offense of manufacturing methamphetamine (§ 11379.6(a)). <u>Id.</u>

27  ///

28  ///

1    Respondent counters that the Petition should be denied
2    because the claims are questions of state law, which this Court
3    cannot address on federal habeas review. Resp't Mem. P. & A. Supp.
4    Answer ("Resp't Mem.") at 8-16. Alternatively, Respondent argues
5    that Petitioner has failed to demonstrate that the state court's
6    decision rejecting her claims on the merits was objectively
7    unreasonable. Id. (citing 28 U.S.C. § 2254(d)). Respondent does not
8    dispute that Petitioner raised her claims for relief in a petition
9    for review before the California Supreme Court and that these
10   claims, therefore, are exhausted. See Johnson v. Zenon, 88 F.3d
11   828, 829 (9th Cir. 1996) (citing Anderson v. Harless, 459 U.S. 4, 6
12   (1982) and Picard v. Connor, 404 U.S. 270, 275 (1971)) (for
13   exhaustion purposes, Petitioner must have "fairly presented" her
14   federal claim to the highest state court with jurisdiction to
15   consider it).

16   **A.     Jury Instruction Regarding Manufacturing Methamphetamine**

17   Petitioner contends that the trial court violated her due
18   process rights by incorrectly instructing the jury on the elements
19   of manufacturing methamphetamine under § 11379.6(a). Pet. at 5.
20   Specifically, Petitioner argued in the state courts[3] that
21   §11379.6(a) should not "be interpreted to encompass the initial and
22   intermediate steps in the manufacturing process, but only the actual
23   act of manufacturing." Lodgment 2 at 12; Lodgment 6 at 31. In
24   instructing the jury, the trial court utilized California Jury

25   _____

26        [3]    In her federal habeas petition, Petitioner asserted two very short,
     vague and conclusory grounds for relief. Pet. at 5. Because Petitioner did not
27   provide any support or explanation for the alleged due process violations, this
     Court looked to her state court pleadings for elucidation on her claims and
28   allegations.

                          -7-                    07cv0228-BEN (BLM)

1    Instruction - Criminal 12.09.1, as follows:

2           Every person who manufactures or offers to
     manufacture methamphetamine, a controlled substance,
3    either directly or indirectly by chemical extraction
     or independently by means of chemical synthesis is
4    guilty of a violation of Health and Safety Code
     11379.6, subdivision (a), a crime.
5
            The crime of manufacturing a controlled substance
6    and the term "manufacture" as used in this
     instruction, does not require proof or mean that the
7    process of manufacturing be completed. Rather, the
     crime is committed when a person knowingly
8    participates in the initial or intermediate steps to
     carry out (sic) to process a controlled substance.
9    Thus, it is unlawful for a person to engage in the
     synthesis, processing, or preparation of a chemical
10   used in the manufacture of a controlled substance,
     even if the chemical itself is not or is not (sic)
11   itself a controlled substance, provided the person
     knows that the chemical is to be used in the
12   manufacturing of a controlled substance.

13          In order to prove this crime, each of the
     following elements must be proved:
14
            1.   A person manufactured or offered to
15   manufacture either directly or indirectly, by means of
     chemical extraction, or independently by means of
16   chemical synthesis, a controlled substance, namely
     methamphetamine; and
17
            2.   That person knew that the substance to be
18   manufactured had the character of a controlled
     substance.
19

20   Lodgment 8 at 460-61; <u>see</u> <u>also</u> Lodgment 1 at 50 (CALJIC 12.09.1).

21          In evaluating the merits of Petitioner's claim, this Court

22   must look through to the last reasoned state court decision.   <u>See</u>

23   <u>Ylst</u>, 501 U.S. at 801-06.   Here, because the California Supreme

24   Court summarily denied Petitioner's petition (Lodgment 7), the last

25   reasoned state court decision came from the California Court of

26   Appeal.   Lodgment 5.

27          The Court of Appeal rejected Petitioner's claim on the

28   following grounds:

III.

DISCUSSION

A.   *Section 11379.6, subdivision (a) prohibits participation in any stage of the process of manufacturing methamphetamine*

Hickey claims there is insufficient evidence that she manufactured methamphetamine pursuant to section 11379.6, subdivision (a) because that statute does not prohibit the initial or intermediate steps necessary to manufacture methamphetamine.  "The interpretation of a statute's meaning is a question of law that is reviewed de novo."  (*People v. Germany* (2005) 133 Cal.App.4th 784, 789.)

Section 11379.6 provides in relevant part:

> "(a) Except as otherwise provided by law, every person who manufactures, compounds, converts, produces, derives, processes, or prepares, either directly or indirectly by chemical extraction or independently by means of chemical synthesis, any controlled substance specified in Section 11054, 11055, 11056, 11057, or 11058 shall be punished by imprisonment in the state prison for three, five, or seven years and by a fine not exceeding fifty thousand dollars ($50,000). (sic)

> [¶]…[¶]

> "(c) Except as otherwise provided by law, every person who offers to perform an act which is punishable under subdivision (a) shall be punished by imprisonment in the state prison for three, four, or five years."[4]

In *People v. Lancellotti* (1993) 19 Cal.App.4th 809, 813 (*Lancellotti*), the court held that section 11379.6, subdivision (a) criminalizes participation in the initial and intermediate stages of the methamphetamine manufacturing process.  The defendant in *Lancellotti* stored chemicals used to manufacture methamphetamine at a commercial storage facility.  (*Lancellotti, supra*, 19 Cal.App.4th at p. 812.)  The storage unit also contained most of the equipment needed to manufacture methamphetamine.  (*Ibid.*)  On appeal from his conviction for manufacturing

---

[4]   Methamphetamine is one of the controlled substances identified in section 11055.  (§ 11055, subd. (d)(2).)

methamphetamine (§ 11379.6, subd. (a)), the defendant claimed the evidence was insufficient to support his conviction because the storage unit lacked a certain piece of equipment and a reducing agent that were necessary to complete the methamphetamine manufacturing process. (*Lancellotti*, *supra*, 29 Cal.App.4th at p. 811.)

The *Lancellotti* court rejected this argument, stating:

> "The evidence in this case clearly establishes that appellant was in the middle of the manufacturing process for methamphetamine, because '… the conduct proscribed by section 11379.6 encompasses the initial and intermediate steps carried out to manufacture, produce or process [a controlled substance].' [Citation.] (sic)
>
> [¶]…[¶]
>
> "The cumulative nature of the evidence in appellant's case, including the contents of the locker which all taken together are only used in manufacture of methamphetamine, the presence of chloro-pseudoephedrine, a substance which cannot be purchased and is used only in the manufacture of methamphetamine, and the odor emanating from the locker, provide substantial evidence that the manufacture of methamphetamine, an incremental and not instantaneous process, was in progress." (*Lancellotti, supra*, 19 Cal.App.4th at p. 813.)

In *People v. Coira* (1999) 21 Cal.4th 868 (*Coira*), the Supreme Court cited *Lancellotti* for the proposition that, "The conduct proscribed by ... section [11379.6, subd. (a)] encompasses the initial and intermediate steps carried out to process a controlled substance." (*Coira, supra*, 21 Cal.4th at p. 874.)  The *Coira* court explained, "[T]he statute makes it unlawful to engage in the chemical synthesis of a substance as one part of the process of manufacturing a controlled substance." (*Ibid.*)  Numerous other courts have reached the same conclusion. (See, e.g., *People v. Heath* (1998) 66 Cal.App.4th 697, 705 [section 11379.6, subdivision (a) "criminalize[s] all acts which are part of the [methamphetamine] manufacturing process"].)

…

///

1
            We conclude that section 11379.6, subdivision (a)
2   criminalizes participation in any stage of the
    methamphetamine manufacturing process, and that there
3   is substantial evidence to support the jury's finding
    that Hickey manufactured methamphetamine pursuant to
    that section.
4
        B.  *The trial court properly instructed the jury*
5           *regarding the offense of manufacturing*
            *methamphetamine*
6
                                    ...
7
            Incorporating the arguments from her brief that
8   we rejected in part III.A., *ante*, Hickey claims this
    instruction was "overly broad" because it defined the
9   crime of manufacturing methamphetamine to include the
    preliminary steps necessary to accomplish this task.
10  For the same reasons we concluded in part III.A.,
    *ante*, that the crime of manufacturing methamphetamine
11  includes any stage of the manufacturing process, we
    conclude that the trial court properly instructed the
12  jury regarding the offense of manufacturing
    methamphetamine.
13

14  Lodgment 5 at 4-9.

15          To the extent Petitioner's claim contains an underlying

16  challenge of the Court of Appeal's conclusion that § 11379.6(a)

17  encompasses initial and intermediate steps of manufacturing,

18  Respondent argues that Petitioner is not entitled to relief on

19  ground one because the claim challenges the state court's

20  determination of a state law issue and, therefore, is not cognizable

21  on federal habeas review.  Resp't Mem. at 8.  Respondent is correct

22  that federal habeas corpus relief is not available to correct

23  alleged errors in a state court's application or interpretation of

24  state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68, 71-72 (1991)

25  ("the fact that the instruction was allegedly incorrect under state

26  law is not a basis for habeas relief"); Lewis v. Jeffers, 497 U.S.

27  764, 783 (1990); see also 28 U.S.C. §§ 2254(a), (b)(2).  Here, the

28  Court of Appeal applied California Supreme Court precedent and

"conclude[d] that section 11379.6, subdivision (a) criminalizes participation in any stage of the methamphetamine manufacturing process" (Lodgment 5 at 8) and the Supreme Court affirmed the Court of Appeal's decision (Lodgment 7). While Petitioner may not agree with this conclusion, this Court does not have authority on habeas review to evaluate a state court's interpretation of state law. See Bradshaw v. Richey, 546 U.S. 74, __, 126 S.Ct. 602, 604 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); Estelle, 502 U.S. at 67-68; Lewis, 497 U.S. at 783.

Petitioner contends, however, that she has raised a federal claim because the trial court's alleged failure to correctly instruct the jury relieved the prosecution of its burden to prove all of the elements of section 11379.6 and violated Petitioner's due process rights. Pet. at 5. Federal habeas relief is warranted where a petitioner establishes that the ailing instruction by itself "so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 71-72; see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (explaining that the challenged instruction cannot merely be "undesirable, erroneous, or even 'universally condemned'" — it must violate some constitutional right). The instruction may not be judged in artificial isolation, rather, it must be considered in the context of both the instructions as a whole and the trial record. See Estelle, 502 U.S. at 72. When reviewing an allegedly ambiguous instruction, courts are required to inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that

1   violates the Constitution.  Boyde v. California, 494 U.S. 370, 380

2   (1990); Calderon v. Coleman, 525 U.S. 141, 146 (1998) (same).

3        Estelle presupposes that the jury instruction was somehow

4   faulty under state law.  See Estelle, 502 U.S. at 71-72.  In this

5   case, the only challenge Petitioner raises to the validity of the

6   jury instruction is that construing § 11379.6(a) as encompassing the

7   preliminary and intermediate steps in the manufacturing process

8   reads § 11379.6(c), which prohibits *offering* to manufacture

9   methamphetamine, out of the statute.  Lodgment 6 at 14.  More

10  precisely, Petitioner submits that an offer to manufacture

11  methamphetamine necessarily constitutes a preliminary step in the

12  manufacture of methamphetamine.  Id. at 15.

13       The Court finds no support for Petitioner's argument.  As

14  Petitioner concedes, no California legal precedent supports this

15  interpretation.[5]  Moreover, Petitioner's reading of § 11379.6 does

16  not yield a logical conclusion.  As the Court of Appeal pointed out,

17  a person can manufacture a controlled substance, or undertake any

18  step of the manufacturing process, without first offering to do so.

19  See Lodgment 5 at 7.  Thus, Petitioner has failed to satisfy the

20  threshold requirement of demonstrating that the jury instruction was

21  incorrect.  Estelle, 502 U.S. at 72.

22  _____

          [5]    Petitioner conceded in her opening brief before the Court of Appeal
23  that:

24          … under *People v. Lancelloti* (sic)*, People v. Heath, People v.
        Stone,* and *People v. Jackson*, her conviction for manufacturing a
25      controlled substance in violation of section 11379.6, subdivision
        (a), can be affirmed.  Each of those cases interpreted section
26      11379.6, subdivision (a), to encompass all initial and intermediate
        steps in the manufacturing process.  *People v. Lancellotti* involved
27      the discovery of equipment necessary to manufacture a controlled
        substance in a commercial storage unit, and is therefore most
        similar to the instant case.

28  Lodgment 2 at 11.

1    Apart from this challenge to the Court of Appeal's legal

2 determination on a state law issue, Petitioner alleges no other

3 factual or legal grounds to support her assertion that the

4 methamphetamine manufacturing instruction violated her

5 constitutional rights.[6] See id. (quoting Donnelly, 416 U.S. at 643)

6 (internal quotations omitted) ("[I]t must be established not merely

7 that the instruction is undesirable, erroneous, or even universally

8 condemned, but that it violated some [constitutional right]").  Nor

9 does Petitioner argue what specific, adverse impact the jury

10 instruction had on the trial or the jury's determination in light of

11 ─────────────────────

12       [6]    Though Petitioner did not raise this argument before the state courts
or in the instant petition, this Court notes that the CALJIC 12.09.1 instruction
13 read to the jury by the trial judge instructed the jury that a person can be
found guilty of manufacturing methamphetamine if the person "manufactures or
14 offers to manufacture" methamphetamine.   CALJIC 12.09.1; Lodgment 8 at 460
(emphasis added).  In other words, the instruction, as given by the trial court,
15 suggests that the jury could have found Petitioner guilty of manufacturing
methamphetamine (§ 11379.6(a)) because they believed she offered to manufacture
16 methamphetamine for someone (§ 11379.6(c)).  This distinction is significant
17 because § 11379.6(c) involves a lower sentencing range.   When reviewing an
allegedly ambiguous instruction, the court first must inquire "whether there is
18 a reasonable likelihood that the jury has applied the challenged instruction in
19 a way" that violates the Constitution.  Boyde, 494 U.S. at 380; Coleman, 525 U.S.
at 146.  Here, the government did not allege in the amended information that
20 Petitioner offered to manufacture methamphetamine.  Lodgment 1 at 5-6.  Nor did
21 it pursue this theory in its opening or closing statements to the jury.  See
Lodgment 8 at 87-96, 463-73.  Moreover, the Court has reviewed the record as a
22 whole and finds no evidence that Petitioner offered to manufacture
methamphetamine for anyone.  See Estelle, 502 U.S. at 72.  While there is
23 evidence that Petitioner offered to sell equipment to Bostic and that Terry H.
24 asked Petitioner for money or methamphetamine, there is no evidence that
Petitioner offered to manufacture methamphetamine for either individual.  See
25 Lodgment 8 at 159-62.  Accordingly, this Court finds that it is not reasonably
26 likely that the jury applied CALJIC 12.09.1 in an unconstitutional way by
convicting Petitioner of § 11379.6(a) (manufacturing) based on evidence that
27 supported a conviction under § 11379.6(c) (offering to manufacture).

28

1    the evidence presented.  Having reviewed both the jury instructions

2    provided and the record as a whole, this Court finds no evidence

3    suggesting that the trial court's failure to provide *sua sponte* an

4    instruction that excluded the preliminary steps of manufacturing

5    methamphetamine affected the fundamental fairness of Petitioner's

6    trial or deprived Petitioner of her right to due process of law.

7    The Court also finds no basis in the record for concluding that

8    there is a reasonable likelihood that the jury applied the

9    challenged instruction in a way that violates the Constitution.

10   <u>Estelle</u>, 502 U.S. at 72; <u>Boyde</u>, 494 U.S. at 380.

11       Accordingly, this Court finds that the trial court's

12   instruction on § 11379.6 did not "so infect[] the entire trial that

13   the resulting conviction violates due process." <u>Estelle</u>, 502 U.S.

14   at 71-72.  The Court, therefore, finds that the Court of Appeal's

15   decision upholding Petitioner's conviction for manufacturing

16   methamphetamine was not contrary to the clearly established federal

17   law set forth in <u>Estelle</u>, <u>see</u> <u>Williams</u>, 529 U.S. at 405, and

18   **RECOMMENDS** that Petitioner's Petition be **DENIED** on ground one.

19   **B.**      <u>**Failure to Provide A Lesser-Included Offense Instruction**</u>

20       Petitioner contends that the trial court violated her due

21   process rights by not instructing the jury on the lesser-included

22   offense of offering to manufacture methamphetamine under

23   §11379.6(c).  Pet. at 5.  Respondent argues that Petitioner is not

24   entitled to federal habeas relief on this claim because the claim

25   does not present a federal question.  Resp't Mem. at 12.

26   Alternatively, Respondent urges that the state court's decision was

27   not objectively unreasonable and that Petitioner has failed to show

28   that the claimed error had a substantial and injurious effect on the

1   jury's verdict.    Id.

2         Because the California Supreme Court summarily denied

3   Petitioner's petition (Lodgment 7), the Court once again must "look

4   through" to the California Court of Appeal's opinion (Lodgment 5).

5   See Ylst, 501 U.S. at 801-06.  Applying California law, the Court of

6   Appeal concluded:

7              Hickey has cited no authority to support her
          assertion that offering to manufacture methamphetamine
8         is a lesser included offense of manufacturing
          methamphetamine, and we are aware of no such
9         authority. As we stated in part III.A, ante, a person
          can manufacture a substance without first offering to
10        do so.  Therefore, the offense of manufacturing
          methamphetamine may be completed without committing
11        the offense of offering to manufacture
          methamphetamine.
12
               We conclude that offering to manufacture
13        methamphetamine is not a lesser included offense of
          manufacturing methamphetamine, and thus, that the
14        trial court did not err in failing to instruct the
          jury sua sponte on the offense of offering to
15        manufacture methamphetamine.

16  Lodgment 5 at 10.

17        Respondent argues that this Court should defer to the state

18  court's determination that offering to manufacture methamphetamine

19  under § 11379.6(c) is not a lesser-included offense of manufacturing

20  methamphetamine under § 11379.6(a).  Resp't Mem. at 14.  As

21  previously noted, federal habeas corpus relief is not available to

22  correct alleged errors in a state court's application or

23  interpretation of state law.  See Estelle, 502 U.S. at 67-68; Lewis,

24  497 U.S. at 783; see also 28 U.S.C. §§ 2254(a), (b)(2).  However,

25  because Petitioner has alleged a federal due process violation and

26  because federal courts are obligated to construe pro se pleadings

27  liberally, see Barron v. Ashcroft, 358 F.3d 674, 676 (9th Cir.

28  2004), this Court finds that Petitioner has alleged a federal

                                  -16-          07cv0228-BEN (BLM)

1    violation sufficient to enable review of her claim.

2           Petitioner challenges the Court of Appeal's decision to

3    uphold her conviction despite the trial court's failure to instruct

4    on the lesser-included offense of offering to manufacture

5    methamphetamine. Pet. at 5. This Court may not grant habeas relief

6    unless the state court's adjudication on the merits "resulted in a

7    decision that was contrary to, or involved an unreasonable

8    application of, clearly established Federal law, as determined by

9    the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

10   Here, as Respondent correctly points out, the United States Supreme

11   Court has not "clearly established" that defendants in noncapital

12   cases have a right to lesser-offense instructions. Resp't Mem. at

13   13. Although the Supreme Court in Beck v. Alabama, 447 U.S. 625,

14   637-38 (1980), held that the Due Process Clause entitles a defendant

15   to an instruction on a lesser-included offense in a capital case,

16   there is no "clearly established" Supreme Court law that requires

17   that the court give a lesser-included offense instruction in a

18   non-capital case. See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir.

19   2000); see also Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir.

20   1984) (quoting James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976))

21   ("the failure of a state court to instruct on a lesser offense [in

22   a non-capital case] fails to present a federal constitutional

23   question and will not be considered in a federal habeas corpus

24   proceeding"). As such, this Court cannot say that the Court of

25   Appeal's decision was contrary to clearly established Supreme Court

26   law.

27   ///

28   ///

1    Even if Petitioner had a constitutionally-recognized right to

2    a lesser-included offense instruction, the Court of Appeal did not

3    err in finding that offering to manufacture methamphetamine is not

4    a lesser-included offense of manufacturing methamphetamine. "Under

5    California law, a lesser offense is necessarily included in a

6    greater offense if either the statutory elements of the greater

7    offense, or the facts actually alleged in the accusatory pleading,

8    include all the elements of the lesser offense, such that the

9    greater cannot be committed without also committing the lesser."

10   People v. Birks, 19 Cal. 4th 108, 117 (1998). As discussed in the

11   previous section, a defendant can commit the offense of

12   manufacturing methamphetamine without ever having *offered* to

13   manufacture methamphetamine. As such, contrary to Petitioner's

14   assertion, offering to manufacture methamphetamine is not a lesser-

15   included offense of the conviction offense.

16   For the foregoing reasons, this Court **RECOMMENDS** that

17   Petitioner's Petition be **DENIED** on ground two.

18   <u>**CONCLUSION AND RECOMMENDATION**</u>

19   In sum, this Court finds that Petitioner has failed to

20   present any evidence suggesting that the California Court of

21   Appeal's decision as to her claims was contrary to, or an

22   unreasonable application of, clearly established federal law. <u>See</u>

23   28 U.S.C. § 2254(d). Nor has Petitioner made any argument that

24   further factual development is necessary, such that an evidentiary

25   hearing would be warranted. <u>See</u> 28 U.S.C. § 2254(e)(2) (exceptions

26   where an evidentiary hearing may be appropriate). As such, this

27   Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas

28   Corpus be **DENIED** and the case dismissed with prejudice.

1    For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that
2  the District Court issue an Order: (1) approving and adopting this
3  Report and Recommendation, and (2) directing that Judgment be
4  entered denying the Petition.

5    **IT IS HEREBY ORDERED** that any written objections to this
6  Report must be filed with the Court and served on all parties **no**
7  **later than** <u>July 13, 2007</u>.   The document should be captioned
8  "Objections to Report and Recommendation."

9    **IT IS FURTHER ORDERED** that any reply to the objections shall
10  be filed with the Court and served on all parties **no later than**
11  <u>August 3, 2007</u>.   The parties are advised that failure to file
12  objections within the specified time may waive the right to raise
13  those objections on appeal of the Court's order.   See <u>Turner v.</u>
14  <u>Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

15    **IT IS SO ORDERED.**

16  DATED:  June 21, 2007

17

18          BARBARA L. MAJOR
          United States Magistrate Judge
19

20

21

22

23  COPY TO:

24  HONORABLE ROGER T. BENITEZ
  UNITED STATES DISTRICT JUDGE

25  ALL COUNSEL AND PARTIES

26

27

28
                    –19–                  07cv0228-BEN (BLM)